UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BullsEye Telecom, Inc.,

    Plaintiff,

v.                                                         Case No. 2:18-cv-10195-VAR-RSW
                                                       Honorable Victoria A. Roberts

BroadSoft, Inc.,

    Defendant.
_____/

## **ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

### **I. Introduction**

BullsEye is a telecommunications company looking to expand its digital voice services. To further this goal BullsEye licensed digital voice software from BroadSoft in 2006. This case arises from a contractual dispute over BroadSoft's ability to engage with BullsEye's end users.

BullsEye alleges three counts: breach of contract, tortious interference with contractual relations, and tortious interference with economic expectancy. BroadSoft moves the court to dismiss the three counts pursuant to Rule 12(b)(6). BroadSoft argues the licensing agreement between the parties does not prohibit solicitation of BullsEye's end users. Oral argument was heard on July 23, 2018.

While BullsEye fails to plead the required elements for Count I, it provided sufficient factual information in its Response to BroadSoft's Motion. The Court will allow an amended complaint for Count I and deny Defendant's Motion to Dismiss without prejudice. However, BullsEye does not sufficiently allege facts to satisfy Count II; the

1

Court grants Defendant's Motion to Dismiss. In Count III, BullsEye does set forth sufficient allegations.

Thus, for the reasons below, the Motion is denied without prejudice for Count I, granted for Count II, and dismissed with prejudice for Count III.

**II. Factual Background**

The License Agreement between BullsEye and BroadSoft, attached to the Amended Complaint, governs the parties' relationship. The License Agreement does not explicitly bar BroadSoft from selling directly to third parties, even BullsEye's own customers.

In June 2017 BullsEye met with Tractor Supply Company (TSC) to pitch an expansion of TSC's digital voice services. BullsEye has provided the majority of TSC's telecommunication needs for the past nine years. At the meeting, TSC informed BullsEye that BroadSoft also bid on its expansion project. BullsEye wrote BroadSoft an August 2017 letter to express its dismay at BroadSoft's alleged interference with its end user. In reply, BroadSoft reminded BullsEye that the Licensing Agreement did not prohibit its interactions with TSC.

Soon after, TSC selected BroadSoft to provide it with digital voice services. Further, TSC eventually transitioned almost all of its business to BroadSoft. In response to BullsEye's letter and TSC's actions, BroadSoft offered a refund to compensate for BullsEye's loss of business. However, BullsEye dismissed the offer as a minuscule portion of the true damage it suffered and filed this suit to recover damages.

The License Agreement mandates that any breach of contract action is governed by New York law. Michigan law applies to the two tortious interference claims.

**III. Legal Standard**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Fed. R. Civ. P. 15(a)(2) allows a party to amend its pleading with the court's leave. A court "should freely give leave when justice so requires."

**IV. Breach of Contract**

To sufficiently plead breach of contract under New York law, the plaintiff must allege the existence of a contract, plaintiff's performance of its obligation, breach of the contract by defendant, and damage as a result. *Campo v. 1st Nationwide Bank,* 857 F. Supp. 264, 270 E.D.N.Y. 1994). In its Amended Complaint, BullsEye fails to specify how BroadSoft breached; the Amended Complaint simply alleges that BroadSoft "has breached its agreement with BullsEye." This is conclusory. And, BroadSoft's interference - selling to BullsEye's end users - clearly does not violate any express provision in the License Agreement. Only in its Response to BroadSoft's Motion does BullsEye allege a specific form of breach: breach of the covenant of good faith.

A covenant of good faith is inherent in all New York contracts. *Aventine Inv. Mgt. v. Canadian Imperial Bank of Commerce*, 697 N.Y.S.2d 128, 130 (1999); *Dalton v. Educ. Testing Serv.*, 639 N.Y.S.2d 977 (1995). A breach of the covenant is "a theory of contractual breach … rather than a separate cause of action," if the two claims are based on the same facts. *Security Plans, Inc. v. CUNA Mut. Ins. Soc.*, 261 F.R.D. 4, 9 (W.D.N.Y 2009).

To successfully allege a breach of the covenant of good faith and fair dealing a plaintiff must demonstrate the defendant acted in a way that - while not breaching the contract - prevented the plaintiff from receiving the benefits of the contract. *JJM Sunrise Automotive, LLC v. Volkswagen Grp. Of America, Inc.*, 997 N.Y.S.2d 270, 287 (N.Y. Sup. Ct. 2014); *Aventine Inv. Mgt.*, 697 N.Y.S.2d 128 at 130. The covenant does not create new substantive rights nor does it require a party to forego its own interests, even if such acts "incidentally lessen" the opposing party's contractual rights. *Security Plans, Inc.*, 261 F.R.D. at 9. The covenant of good faith does not impose any obligations "inconsistent with other terms" of the contract but does include "any promise which a reasonable person in the position of the promisee would be justified in understanding were included." *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 501 (N.Y. 2002) (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (N.Y. 2002)).

BullsEye argues that BroadSoft's targeting of its end users effectively denied BullsEye from collecting the benefits of the License Agreement, resulting in a breach of the covenant of good faith. The crux of BullsEye's argument relies on *JJM Sunrise Automotive* and its progeny. In *JJM Sunrise Automotive*, the plaintiff entered into an

agreement with the defendant to sell Audi cars. 997 N.Y.S.2d 270, 274. The agreement did not specifically bar the defendant from placing other retailers in a near-by location. *Id.* However, soon after entering into the agreement, the defendant went ahead with a second dealership in plaintiff's area. *Id.* The defendant, despite having planned the expansion well before its contract with plaintiff, never informed the plaintiff of its plans. *Id.* The plaintiff alleged that a second store in the area would significantly lower plaintiff's revenue, spoiling the purpose of the contract and thus breaching the covenant of good faith. *Id.* The Court found plaintiff's allegations sufficient and denied the defendant's Motion to Dismiss. The Court reasoned that the defendant's non-disclosure of pertinent information, coupled with the direct creation of competition, if true, would essentially deny the plaintiff its intended benefits while allowing the defendant to still reap the benefits of the contract. *Id.* The Court found such allegations sufficient to plead a plausible breach of the duty of good faith. *Id.*

BroadSoft counters, arguing that BullsEye attempts to impose new contractual obligations on it. BroadSoft relies heavily on *Gas Natural, Inc. v. Iberdrola*, 33 F. Supp. 2d 373 (S.D.N.Y. 2014). In *Gas Natural* the plaintiff attempted to purchase one of the defendant's companies. *Id.* at 376. During negotiations the parties agreed to a non-binding Letter of Intent to negotiate in good faith that did not include an "exclusivity" clause. *Id.* As negotiations dragged on, the defendant sold the company to a third party. *Id.* at 377. The plaintiff sued, arguing the defendant had a duty under the covenant of good faith to inform the plaintiff of any third parties. *Id.* The Court refused to impose an obligation under the duty of good faith primarily because the parties, in negotiations, explicitly rejected an exclusivity clause. *Id.* at 384. Further, the Court noted that "some

deliberate misconduct" must occur to violate the duty of good faith and the plaintiff failed to allege misconduct. *Id.* The Court dismissed plaintiff's suit. *Id.*

The situation in *Gas Natural* is not directly analogous to the issues at hand. Here, similar to the defendant in *JJM* profiting from the plaintiff while simultaneously undermining it, BroadSoft actively competed with BullsEye for TSC's business, directly denying BullsEye the benefits it reasonably expected from the License Agreement. Further, BroadSoft continued to receive benefits from BullsEye at the same time.

Unlike BroadSoft and the defendant in *JJM*, the defendant in *Gas Natural* did not continue to profit from its contract with the plaintiff once it became clear it could not deliver the full benefits the plaintiff reasonably expected from the contract. Nor did the defendant in *Gas Natural* deny plaintiff the benefits of the Letter of Intent - good faith negotiations - while looking for other buyers. Considering the analogous nature of *JJM* to the present dispute, the Court finds *JJM* controlling.

However, despite the well-pled factual allegations in its Response, Bullseye must allege and support all elements of a claim in the complaint – not merely allege a conclusion in the complaint and then provide facts in a brief.

The second Amended Complaint should allege a specific theory of breach with factual support, not a general conclusion absent of specific facts.

**V. Tortious Interference with Contractual Relations**

BullsEye's Tortious Interference with Contractual Relations claim contains pleading defects.

To state a Tortious Interference with Contractual Relations claim BullsEye must allege the existence of: 1) a contract with a 3rd party; 2) a breach by the 3rd party; 3) and

6

an unjustified instigation of the breach by the defendant. *Jarrett-Cooper v. United Air Lines, Inc.*, No. 11-13674, 2013 WL 6095556, at *7 (E.D. Mich. Nov. 20, 2013). Further, the defendant must have knowledge of the contract between the plaintiff and the third party. *Jarrett-Cooper*, 2013 WL 6095556, at *7 (*citing Peter Vill & Assoc., Inc. v. Michigan Dep't of Natural Res.*, 93 Mich.App. 724, 732 (1979).

A. Breach of Contract

BroadSoft contends that BullsEye fails to sufficiently allege TSC breached its contract. BullsEye alleges that TSC decreased business with BullsEye but does not allege that such a decrease in business constituted a breach of contract.

While reviewing a 12(b)(6) motion the Court must "construe the complaint in the light most favorable to the plaintiff." *DirecTV, Inc.*, 487 F.3d at 476. However, viewing a claim favorably cannot atone for a failure to plead a required element. To survive the Motion to Dismiss BullsEye needs to plead every element of this claim. To satisfy the second element BullsEye must plausibly allege that the decreased business constituted a breach of contract.

At oral argument BullsEye admitted – when pressed - that it could not allege a breach. Instead, BullsEye relies on *Bonelli v. Volkswagen of America, Inc.*, 421 N.W.2d 213 (Mich. Ct. App. 1995) and *Woody v. Tamer* 405 N.W.2d 213 (Mich. Ct. App. 1989). BullsEye argues these cases demonstrate that a breach of contract is not necessary to satisfy the 2nd element of Tortious Interference with Contract. Instead, BullsEye claims that interference that renders the contract a hardship is enough to satisfy the second element. BullsEye is mistaken.

7

*Bonelli* simply does not address Tortious Interference with Contractual Relations. *Bonelli* is an analysis of Tortious Interference with Business Relationship or Expectancy – a separate and distinct tort.

*Woody* offers no support for BullsEye's contention either. In fact, the Court in *Woody* found the plaintiff sufficiently alleged breach of contract.

Given that breach of contract is an essential element of a Tortious Interference with Contractual Relations claim and BullsEye admitted it can't demonstrate breach, the Motion is granted.

## VI. Tortious Interference with Economic Expectancy

BullsEye contends that BroadSoft deprived it of an economic expectancy by intentionally and knowingly interfering in its business relationship with TSC.

To state a claim for Tortious Interference with Economic Expectancy the plaintiff must allege the existence of a valid business relationship, knowledge of the relationship on the part of the defendant, intentional interference causing or inducing a termination of the relationship or expectancy, and damage as a result. *Saab Auto. AB v. General Motors Co.*, 953 F. Supp.2d 782, 788 (E.D. Mich. 2013) (quoting *Maiberger v. City of Livonia*, 724 F.Supp.2d 759, 776 (E.D. Mich. 2010)).

A. *Valid Business Expectancy*

To satisfy the first element, BullsEye must demonstrate that it possessed more than a "subjective expectation of entering into a [business] relationship." *Atlas Technologies, LLC v. Levine*, 268 F.Supp.3d 950, 967 (E.D. Mich. 2017) (quoting *Compuware Corp v. IBM*, 259 F.Supp.2d 597, 604 (E.D. Mich. 2002)); *Saab Auto*, F. Supp.2d at 789. To establish a valid expectancy a plaintiff must objectively establish

8

that the expectancy is reasonably or probably likely to occur. *Atlas LLC*, 268 F.Supp.3d at 967; *Trepel v. Pontiac Osteopathic Hosp.,* 135 Mich. App. 361, 377 (1984) (finding that the economic expectancy cannot just be "wishful thinking."); *Lucas v. Monroe Cty.*, 203 F.3d 964, 979 (6th Cir. 2000) (finding that the plaintiff must prove "an anticipated business relationship with an identifiable class of 3rd parties).

BroadSoft contends that BullsEye fails to sufficiently allege facts supporting the existence of a valid business expectancy. BroadSoft claims that BullsEye merely presented an offer to TSC, along with numerous other companies. BroadSoft says this mere "presentation" to TSC does not suggest that it had a "reasonable" chance of landing the TSC deal. BroadSoft concludes that at such an early stage in the bidding process it is "wishful thinking" to assume a presentation would lead to a deal.

BullsEye counters, arguing that its long contractual history with TSC allows BullsEye to "reasonably expect" the relationship to continue. Similar allegations in *Compuware Corp. v. International Business Machines* were sufficient for the Court to find a current business relationship, but not a future expectancy. 259 F.Supp.2d at 604. The Court allowed the plaintiff to amend the complaint to demonstrate a future economic expectancy. *Id.* The holding in *Compuware* and the amendment route allowed by that Court are guiding here.

*Atlas Technologies* is also persuasive. In *Atlas*, the plaintiff alleged that defendant lowered its credit score through fraudulent activity. 268 F.Supp.3d at 967. Due to the lowered credit score, a 3rd party company automatically removed Atlas from its list of subcontractors who frequently bid on jobs. *Id.* The Court ruled that the mere deprivation of a chance to bid on projects deprived the plaintiff of a valid business

9

expectancy. *Id.* The Court noted that discovery may establish plaintiff's position as a mere subjective expectation. *Id.* However, reading the allegations favorably, the Court found the mere presence on the list of bidders for future jobs gave the plaintiff a probable likelihood of eventually landing a contract. *Id.* The Court denied the defendant's Motion to Dismiss. *Id.*

Here, just as Atlas Technologies possessed a business history with the 3rd party company, BullsEye enjoyed a nine year contractual history with TSC. Further, unlike the plaintiff in *Atlas*, who merely competed for jobs, BullsEye bid on contracts and actually supplied TSC for nine years, pointing to an even stronger presumption of economic expectancy. BullsEye's invitation to bid on the digital voice service, coupled with its long history of competing for, and winning, TSC jobs, is enough to demonstrate BullsEye possessed a probable or reasonable expectancy of winning the digital voice bid absent BroadSoft's interference.

*B. Knowledge of the Relationship*

The second element requires the defendant to know of plaintiff's relationship with a 3rd party. *Saab Auto*, 953 F. Supp.2d at 789. BroadSoft contends that BullsEye does not sufficiently allege facts showing its knowledge. However, in the Amended Complaint, BullsEye clearly states that BroadSoft knew TSC "was a customer of BullsEye." Further, BullsEye alleges that BroadSoft used confidential price information to underbid BullsEye on the TSC account, inferring knowledge of BullsEye's relationship with TSC. The pleadings, read favorably and accepted as true, sufficiently allege that BroadSoft knew of TSC and BullsEye's relationship.

*C. Intentional Interference Inducing a Termination*

To show an "intentional interference" a plaintiff must allege that the defendant committed a "*per se* wrongful" act or a "lawful act with malice" that is "unjustified in law." *Saab Auto*, 953 F. Supp.2d at 790 (quoting *Chambers v. City of Detroit*, 786 F.Supp.2d 1253, 1274-74 (E.D. Mich. 2011). A *per se* wrong is "inherently wrongful or an act that can never be justified under any circumstances." *Urban Associates, Inc.v. Standex Electronics, Inc.*, 216 Fed.Appx. 495, 514 (6th Cir. 2007). A lawful act with malice and without justification occurs when the defendant possesses an improper motive. *Bonds v. Philips Elec.North Am.*, No.2:12-cv-10371, 2014 WL 222730 (E.D. Mich. Jan. 23, 2014). "Legitimate business" motives, however, can never constitute an improper motive. *Urban Assocs.*, 216 Fed.Appx. at 514. The analysis to show intentional interference is identical in Tortious Interference with Contractual Relations and Economic Expectancy. *Global Fleet Sales, LLC v. Delunas*, 203 F.Supp.3d 789, 812 (E.D. Mich. 2016).

BullsEye argues that the use of confidential information is unlawful and therefore a *per se* wrongful act. In *Ajuba Intern. L.L.C., v. Saharia*, 871 F.Supp.2d 671 (E.D. Mich. 2012) the plaintiff alleged the defendant misappropriated trade secrets. *Id.* at 690. The Court found the misappropriation an inherent wrong and thus a *per se* wrong. 871 F.Supp.2d at 690; *Compuware Corp.*, 259 F.Supp.2d at 605 (finding misappropriation of trade secrets a sufficient allegation to support intentional interference). BullsEye contends that the misappropriation of trade secrets is directly analogous to using confidential pricing information and that both constitute a *per se* wrong.

BroadSoft counters, claiming that, despite BullsEye's allegations, it used no confidential information in its negotiations with TSC. BroadSoft, however, offers no legal argument but instead merely disputes BullsEye's allegations.

A 12(b)(6) motion is not the place to resolve factual disputes. Under the standards for a motion to dismiss, the Court must accept plaintiff's well-pled factual allegations as true and draw every reasonable inference for the plaintiff. *DirecTV, Inc.*, 487 F.3d, 476 (6th Cir. 2007). BullsEye's claim that BroadSoft used confidential information is supported by its allegation that BroadSoft knowingly undercut BullsEye's pricing on the TSC account. BullsEye provides factual support for its allegation, which the Court must accept as true.

In the alternative, BroadSoft argues that its actions do not constitute intentional interference because it acted with legitimate business motives. However, a legitimate business motive cannot excuse a *per se* wrong. A legitimate business motive can only prove that an act was not improperly motivated. *Bond*, 2014 WL 222730 at *4. The lack of an improper motive only justifies lawful acts. *Id.* An unlawful act, and thus a *per se* wrongful act is not excused, as a matter of law, by legitimate business motives. Further, any question of motive presents a question of fact, and it is not appropriate for the court to resolve this at the pleading stage.

Both of BroadSoft's arguments fail. The Court finds BullsEye sufficiently pled Intentional Interference Inducing Breach.

### D. Damages

BullsEye sufficiently alleges damages. BullsEye states in the Amended Complaint that it lost the expected revenue from the digital voice opportunity to TSC, an amount in excess of $75,000.

BroadSoft's Motion to Dismiss Count III is denied.

## VII. Conclusion

BroadSoft's Motion to Dismiss: Count I is denied without prejudice; Count II is granted; and Count III is denied with prejudice.

Plaintiff must amend its complaint in accordance with the Court's directions by August 14, 2018.

**IT IS ORDERED.**

S/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: July 31, 2018